Rufus MORGAN, Thomas L. Stout, Ronald W. Shally, Henry F. Howe, Greg Tannenbaum, and Carl Fulkerson, Plaintiffs–Appellants,

v.

INDEPENDENT DRIVERS ASSOCIATION PENSION PLAN, William Scharmer, Trustee, George Whitehead, Trustee, and Clarence Washington, Trustee, Defendants–Appellees.

Nos. 91–1029 & 91–1310.

United States Court of Appeals, Tenth Circuit.

Sept. 22, 1992.

Timothy J. Parsons (David B. Seserman and Dean C. Heizer, also of Gorsuch, Kirgis, Campbell, Walker and Grover, with

him on the briefs) Denver, Colo., for plaintiffs-appellants.

James C. Ruh of Jensen Byrn Parsons Ruh & Tilton, Denver, Colo., for defendants-appellees.

Before McKAY, Chief Judge, LOGAN and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiffs, plan participants, brought suit under 29 U.S.C. § 1132, the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 (ERISA), *id.* §§ 1001–1461, against the defendant trustees as administrators of the Independent Drivers Association Pension Plan (the plan). They alleged that the trustees breached their fiduciary duties when, in response to a change in funding method, the trustees adopted an amendment to terminate the plan. After originally finding that the defendant trustees breached their fiduciary duties, the court appointed a special master and then reversed its earlier ruling, adopting the special master's report and recommendations which approved the termination of the plan and the distribution of the plan's assets. On appeal, plaintiffs contend: (1) the district court erred in its order after reconsideration in concluding that the defendant trustees did not breach their fiduciary duties; (2) the district court's order after reconsideration is unclear and therefore a remand for clarification is required; (3) the court abused its discretion in denying plaintiffs' request for attorneys' fees without explanation; and (4) the court erred in adopting the special master's report and recommendations regarding the distribution of the plan's assets.

I

The plan is an employee pension benefit plan as defined in 29 U.S.C. § 1002(2)(A), established by the Independent Drivers Association (IDA) for the benefit of taxicab drivers in Denver. For many years the plan was funded on an actuarial basis from participant contributions and thus was a "defined benefit plan" under *id.* § 1002(35).

The events leading to this litigation began on March 18, 1988, when the IDA membership amended the IDA constitution to provide that the plan be funded on a per-shift basis at the rate of $1.40 per shift. In response to this change in funding method the defendant trustees took the action that plaintiffs assert constituted a breach of their fiduciary duties. On June 4, 1988, after obtaining legal and actuarial advice, the trustees, exercising their authority to amend the plan, terminated it effective March 31, 1988, denied severance benefits to participants who terminated their employment on or after April 1, 1988, and ordered distribution of the plan's available assets to participants pursuant to the plan's termination provisions with slight modifications.

The trustees notified participants that the change in funding method converted the plan from "a defined *benefit* plan providing actuarially determined benefits to a defined *contribution* plan.... This resulted in the termination of the defined benefit Plan." Supplemental Appendix to Answer Brief of Defendant–Appellee Independent Drivers Association Pension Plan at 24 (hereinafter Supp.App. No. 91–1029). Subsequently, the IDA membership again amended the IDA constitution to dissolve the plan and refund all per-shift contributions. Plaintiffs then filed suit against the plan and the trustees, and the district court took the actions summarized above.

II

First we address whether the district court erred in ultimately concluding that the defendant trustees did not breach their fiduciary duties. "The decisions of a fiduciary will be upheld unless they are arbitrary and capricious, not supported by substantial evidence or erroneous on a question of law." *Ershick v. United Mo. Bank*, 948 F.2d 660, 666 (10th Cir.1991). We review for clear error the district court's findings of fact, and review de novo its conclusions of law. *See id.*

Originally, the district court concluded that the trustees' adoption of the June 4 amendment terminating the plan was based

"on an erroneous interpretation of ERISA and the Plan," and therefore was arbitrary and capricious. Appendix to Opening Brief of Plaintiffs–Appellants Rufus Morgan, et al. at 66 (hereinafter App. No. 91–1310). The district court recognized that the trustees' amendment was based on their belief that the new funding method had transformed the plan from a defined benefit plan to a defined contribution plan, was inadequate to pay the benefits required under the plan, and had effectively terminated the plan. The district court never found, or even suggested, that the trustees' beliefs were anything other than held in good faith.

In that original order, the district court criticized the trustees' actions on only two grounds. First, the June 4 amendment did not set up separate accounts for each participant, as required for a defined contribution plan. From that the district court concluded that the trustees had failed to demonstrate that the new funding method transformed the plan into a defined contribution plan. Second, the new funding method did not "requir[e]" the trustees to terminate the plan, *id.* at 66, particularly because under § 9.1 of the plan the trustees could have amended the plan to reduce benefits.

Ultimately, however, at the hearing on defendant's motion for reconsideration, the district court concluded that the trustees

> did act, in their opinion, in providing benefits to the participants in the plan, and that they acted with the care and skill, and prudence, and the diligence under the circumstances which prevail here, namely, the amendment which the union made, and the three options that were given to them by their counsel, ... and [after] discussing the matter with an outside actuary.... And they adopted the third option which was laid before them, which in effect terminated the benefit plan, and they were to purchase annuities, which they did.... I do find that

they did not breach their fiduciary duty, in the acts that they took.

Supplemental Appendix to Answer Brief of Defendants–Appellees at 62–63 (hereinafter Supp.App. No. 91–1310). Subsequently, the district court entered a one-page order finding "that the [trustees] did not breach their fiduciary duties." App. No. 91–1310 at 75.

Plaintiffs do not contend that the trustees acted other than in good faith, and they do not dispute that the trustees sought and relied on expert advice. Rather, they argue that the trustees made an error because their June 4 amendment terminating the plan was not authorized by, and was contrary to, the terms of the plan. Plaintiffs argue that 29 U.S.C. § 1104(a)(1) is a strict liability statute and that the trustee's good-faith reliance on the advice of experts is not a defense to a breach of fiduciary duty claim. Plaintiffs assert that their position is supported by the statute itself, case law, and general principles of trust law. Without deciding whether the trustees did act properly, we reject plaintiffs' position as applied to the situation before us.

We begin with the language of the statute. The heading of subsection (a) reads: "Prudent man standard of care." 29 U.S.C. § 1104(a). Fiduciaries must act "solely in the interest of the participants and beneficiaries," *id.* § 1104(a)(1), and must do so "for the exclusive purpose of" providing benefits and administering the plan, *id.* § 1104(a)(1)(A).[1] Fiduciaries must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). Fiduciaries must diversify plan investments, *id.* § 1104(a)(1)(C), and must act "in accordance with the documents and instruments governing the plan," *id.* § 1104(a)(1)(D).

---

**1.** Subsection (a)(1)(A) is cited in plaintiffs' complaint, the district court's original order finding a breach of fiduciary duty, and plaintiffs' appellate briefs. But nothing in the record suggests

that the trustees acted for any purpose other than providing benefits and administering the plan. Thus, this subsection is not applicable on the facts before us.

Of these provisions only the "accordance with the documents" is at issue, and for purposes of this appeal we assume that the trustees violated subsection (a)(1)(D). Plaintiffs assert that this subsection (a)(1)(D) is a separate fiduciary responsibility that is not subject to the prudent person standard of subsection (a)(1)(B). The grammatical structure of the statute as a whole, however, suggests that the prudent person standard applies to all subsections. *See id.* § 1104(a); *see also First National Bank v. Retirement Trust for Employees of Standard Oil Co.*, No. 90–C–3981, 1991 WL 285269, at *3 (N.D.Ill. Dec. 27, 1991).

The case law indicates that in some circumstances good-faith reliance on the advice of experts is not a defense to a breach of fiduciary duty claim. This is true of a breach of the duty of loyalty. *Leigh v. Engle*, 727 F.2d 113, 124 (7th Cir.1984); *Donovan v. Bierwirth*, 680 F.2d 263, 271–72 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); *see also Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1239–41 (2d Cir.1989) (involving violation of clear and absolute terms of plan regarding investment guidelines); *Cutaiar v. Marshall*, 590 F.2d 523, 527–31 (3d Cir.1979) (involving prohibited transaction under 29 U.S.C. § 1106(b)(2); not reaching issue of whether good faith reliance on a Taft–Hartley umpire is a defense to trustee liability). Those kinds of violations are not at issue here. Rather, we have before us a good faith but allegedly erroneous exercise of the trustees' powers under the plan agreement. The Third Circuit has said that a plaintiff

> does not establish a violation of fiduciary duty simply by showing that the [trustee] did not follow the terms of the plan. If such action is undertaken pursuant to a good faith, albeit erroneous, interpretation, ERISA's fiduciary provisions are not violated. To establish liability, willful or bad faith conduct must be proved.

*Burke v. Latrobe Steel Co.*, 775 F.2d 88, 91 (3d Cir.1985). Likewise, the Seventh Circuit has said that "trustees do not breach their fiduciary duties by interpreting the plan in good faith, even if their interpretation is later determined to be incorrect."

*Challenger v. Local Union No. 1*, 619 F.2d 645, 649 (7th Cir.1980). The plan provisions in *Burke* and *Challenger* that allegedly were erroneously interpreted are similar to the provisions at issue in the instant case in that all of them are somewhat ambiguous and subject to different reasonable interpretations.

Plaintiffs assert that principles of trust law support their position. Certain principles of trust law do apply to ERISA. *See, e.g., Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989); *Ershick*, 948 F.2d at 666. A breach of trust ordinarily requires negligence, *see* Restatement (Second) of Trusts § 201 cmt. a (1959) (hereinafter Restatement); plaintiffs admit that, *see* Opening Brief of Plaintiffs–Appellants Rufus Morgan, et al. No. 91–1310 at 26 (recognizing that "[a]ctions for breaches of fiduciary duty are, under trust doctrines, negligence actions"). However, even without fault or negligence, in some situations a trustee's mistake can be a breach of trust. Restatement § 201 cmt. a. When a trustee "violates a duty because of a mistake *as to the extent of his duties and powers* ... he is not protected from liability merely because he acts in good faith, nor is he protected merely because he relies upon the advice of counsel." *Id.* cmt. b (emphasis added). On the other hand,

> [w]hen the question ... depends ... upon whether [a trustee] has acted with proper care or caution, the mere fact that he has made a mistake of fact or of law *in the exercise of his powers or performance of his duties* does not render him liable for breach of trust. In such a case he is liable for breach of trust if he is negligent, but not if he acts with proper care and caution.

*Id.* cmt. c (emphasis added).

Although plaintiffs assert that the principle of comment b applies, in the instant case the trustees' mistake was not regarding the extent of their duties and powers. The plan gave the trustees "full power and authority to adopt, modify, and rescind from time to time any and all regulations or rules deemed necessary or appropriate

... [and the] power and authority to construe any of the terms or provisions of this Plan ... and to supply or correct any omissions, inconsistencies, or ambiguities." Supp.App. No. 91–1029 at 20 (plan § 10.1). Furthermore, the trustees had the power to "amend or modify th[e] Plan, in whole or in part." *Id.* at 18 (plan § 9.1). As the case is presented to us, the defendant trustees made a mistake in interpreting the plan regarding the legal effect of the new funding method. This is a mistake in the *exercise* of their power or the performance of their duties, and thus the principle of comment c applies.

■ For the foregoing reasons, the trustees are not subject to strict liability for their mistake. Rather, they were required to act prudently under the circumstances before them. In response to an extraordinary event, the IDA's change in the plan's funding method, the trustees sought out the expert advice of counsel and an actuary, considered in good faith the three options presented to them, and implemented the option recommended by the experts. The district court after reconsideration correctly applied the prudent person standard and correctly determined that the trustees did not breach their fiduciary duties.

### III

We need address only briefly plaintiffs' claim that a remand is necessary for clarification of the district court's order on reconsideration because that order is unilluminating and contradictory to the court's original memorandum opinion and order. It is true that the two orders come to opposite conclusions. But this simply is the result of the court properly reconsidering its original decision. It also is true that in the order on reconsideration the district court did not expressly retract its original conclusion that the trustees "based their termination of the Plan on an erroneous interpretation of ERISA and the Plan, ...

[and thus] termination by the [trustees] was arbitrary and capricious." App. No. 91–1310 at 66. But the order on reconsideration, albeit brief, is supplemented by the court's oral ruling at the hearing on the motion for reconsideration. Although the court could have addressed expressly its earlier arbitrary and capricious language, after reconsideration the court made its view on the key issue clear: the trustees did not breach their fiduciary duties. Thus, we hold that a remand for clarification is not necessary.

### IV

■ Next we address plaintiffs' claim that the district court abused its discretion in denying their request for attorneys' fees. Plaintiffs sought fees pursuant to 29 U.S.C. § 1132(g)(1). In the original memorandum opinion and order, in which it granted summary judgment for the plaintiffs on their first and second claims for relief, the district court declined to award fees but gave no explanation for its decision.

We have held that if a party seeks attorneys' fees under § 1132(g)(1), and the district court denies the request without explanation, a remand is necessary. *See, e.g., Downie v. Independent Drivers Ass'n Pension Plan,* 934 F.2d 1168, 1171 (10th Cir.1991); *Gordon v. United States Steel Corp.,* 724 F.2d 106, 108 (10th Cir.1983). Although the statute does not expressly require that a party prevail as a condition to receiving an award of attorneys' fees, *see* 29 U.S.C. § 1132(g)(1); *cf.* 42 U.S.C. § 1988(b) (prevailing party status required), we have remanded cases for denial of fees without explanation only when the party seeking fees had prevailed at least partially, *see, e.g., Downie,* 934 F.2d at 1169; *Gordon,* 724 F.2d at 108.

As the instant case is presented to us, plaintiffs did not prevail on any of their claims.[2] Their first and second claims

---

2. Defendants state that to the extent plaintiffs seek fees from the plan, as distinguished from the trustees individually, this court should remand and require the district court to give reasons for its denial of fees. This position is based on the view that plaintiffs partially prevailed on their first claim because the district court voided the trustees' June 4 amendment.

were dismissed with prejudice after reconsideration; their third claim was dismissed with prejudice when the court adopted the report of the special master; and their fourth claim was dismissed with prejudice in the court's original memorandum opinion and order. Therefore, although we adhere to the rule that a district court must enunciate the reasons for a denial of a request for attorneys' fees, when the party seeking fees did not prevail on any of its claims we decline to remand to require the district court to state that the party did not prevail.

## V

■ Finally we come to plaintiffs' objections to the district court's adoption of the special master's report and recommendations regarding the distribution of the plan's available assets upon termination. Plaintiffs object to the treatment of severance benefits and the method of allocating assets among participants.

As to severance benefits, the plan provided that eligible participants who terminated their employment were entitled to a severance benefit. Section 5.2 of the plan provided that this benefit would be in the form of either a deferred pension benefit or a lump sum benefit, with the form of payment being "at the option of the [trustees]." Supp.App. No. 91–1029 at 15. In their June 4 amendment, the trustees provided that no severance benefits, in either form, would be paid to participants who terminated their employment on or after April 1, 1988—the day after the effective date of the plan's termination.[3] The master fully agreed with this decision. The master said that he would do exactly the same thing

It is true that in its original memorandum opinion and order part of the relief ordered by the district court was that "[t]he June 4, 1988 [a]mendment is void and unenforceable." App. No. 91–1310 at 73. However, in light of the district court's order on reconsideration, wherein plaintiffs' first claim was dismissed with prejudice, we see no factual basis in the record to support defendants' concession and therefore we decline to accept it.

to avoid undermining the legitimate pension rights of retired drivers in favor of drivers who generally have not yet reached retirement age under the Plan. By paying the severance benefits to severed drivers, the financial integrity of the Plan would be so impaired as to make the Plan almost meaningless to retirees. *Id.* at 43. This treatment of severance benefits did not affect the right of drivers who terminated their employment before the effective date of the plan's termination. Rather, it simply effectuated the plan's termination as to all benefits, specifically severance benefits as well as pension benefits.

As to the method of allocating available assets among participants, the plan provided that upon termination participants would receive pension benefits according to a schedule of specific classes. In the event of insufficient assets, as in the instant case, the plan provided that the classes would be funded in the order of precedence, "with all benefits being provided within a class before making any allocations to individuals in the following classes." *Id.* at 19 (plan § 9.3). Class 1 consisted of already-retired pensioners; class 2 those eligible for a normal pension; class 3 those eligible for an early retirement pension; class 4 those with fifteen years continuous service; and class 5 the general fund of the union. The master recommended that the assets be distributed according to the classes and order of precedence of the plan itself and that two new classes be inserted ahead of the union's general fund.[4] New class 5 was participants who had worked over 400 shifts; new class 6 was all remaining participants; and the IDA's general fund became class 7.[5]

3. Plaintiffs do not contend, and nothing in the record suggests, that plaintiffs terminated their employment either before or after April 1, 1988.

4. The master's recommendation implemented the same distribution scheme, including the addition of the two new classes that the trustees had provided for in their June 4 amendment.

5. Plaintiffs are in classes 4 and 5. Thus, under the master's recommendations, plaintiffs are treated either the same as or more favorably than they would have been under the original

Based on our review of the record, we cannot find clearly erroneous any of the findings of fact contained in the master's report and adopted by the district court. After considering plaintiffs' arguments, we see nothing as a matter of law that convinces us that we should disturb the district court's adoption of the master's recommendations regarding the termination of the plan and the distribution of assets.

AFFIRMED.

terms of the plan. Plaintiffs suggest that the class-precedence provision be abrogated and all classes receive the same percentage of benefits. However, because plaintiffs knew or should have known of the terms of the plan, effectively implementing those terms is not inequitable.