In the Matter of the Trust of FRANZEN.

Frances B. FRANZEN, Petitioner/Cross–Respondent,

v.

NORWEST BANK COLORADO, National Association, Trustee, Respondent/Cross–Petitioner.

No. 96SC668.

Supreme Court of Colorado, En Banc.

April 13, 1998.

Rehearing Denied May 18, 1998.

Collins & Pringle, Dwight L. Pringle, Waldbaum, Corn, Koff, Berger & Cohen, Scot M. Peterson, Denver, for Petitioner/Cross–Respondent.

Charles W. Ennis, Denver, for Respondent/Cross–Petitioner.

Justice SCOTT delivered the Opinion of the Court.

This case arises out of a disagreement over the disposition of assets in a trust created for the benefit of Frances Franzen by her late husband, James Franzen. In *Norwest Colorado v. Franzen,* No. 95CA0386 (Colo.App. June 27, 1996) (not selected for publication), the court of appeals held that James O'Brien, Mrs. Franzen's brother, was authorized to dissolve the trust by virtue of a power of attorney executed by Mrs. Franzen. The court of appeals also held, moreover, that the trustee was not liable for litigation expenses associated with challenging O'Brien's authority to dissolve the trust. We affirm the judgment of the court of appeals in its entirety.[1]

**I.**

On February 4, 1992, James Franzen, the settlor, executed an instrument creating a trust designed to provide for himself and his wife, Frances Franzen, in their old age. The corpus of the trust initially consisted of three bank accounts containing a total of $74,-251.19, but it did not include certain other assets held by Mr. and Mrs. Franzen as joint tenants, such as the family home. Norwest Bank, then known as United Bank of Den-

[1] The issues we agreed to decide, as framed by the parties, were:

(1) whether the court of appeals erred in holding that the compensated professional trustee was not liable for trustee and attorney fees drawn from the trust subsequent to the revocation of the trust and removal of the trustee, and;

(2) whether the court of appeals erred in holding that an agent acting under a durable power of attorney executed prior to the effective date of § 15–14–608(2), C.R.S. (1997), has the power to revoke a trust even though the trust was not specifically referenced in the instrument granting the power.

ver,[2] was named as the sole trustee in the trust agreement.

James Franzen was terminally ill when he created the trust, and he died four months later. Upon Mr. Franzen's death, a trust officer at the bank sent a letter to Frances Franzen, who was living in a nursing home, notifying her that she had "certain rights regarding the trust." A copy of the trust agreement was enclosed, and the letter referred to Article 5.1, which states:

At ... [James'] death, if Frances survives ... [him], she may direct ... [the] trustee in writing to deliver the residuary trust estate to her within three months of [James'] death. If she does not so direct, this trust shall continue to be administered as provided in Article 3. If she so directs, the trust shall terminate on the date the trust estate is distributed to her.

The letter asked Mrs. Franzen for a decision in writing by August 1, 1992, "so that we have time to make arrangements for the transfer of assets if necessary." A handwritten note at the bottom of the letter, signed by Mrs. Franzen and dated July 14, 1992, says, "I wish to leave the trust intact for my lifetime."

The bank, concerned about the disposition of the vacant house and other assets not included in the trust, contacted Mrs. Franzen's nephews, who were named as remaindermen of the trust. The two nephews were reluctant to assume responsibility for Mrs. Franzen's affairs, though, and Mrs. Franzen's brother, James O'Brien, intervened. O'Brien moved Mrs. Franzen to a nursing home in Kentucky, where he lived, and asked the bank to turn over Mrs. Franzen's assets to him.

In the course of dealing with the bank, the nephews expressed concerns about O'Brien's motives. The bank declined to comply with O'Brien's request, and filed a Petition for Instruction and Advice in the Denver Probate Court (probate court). Before the hearing, O'Brien sent the bank a copy of a power of attorney purporting to authorize him to act in Mrs. Franzen's behalf and a letter

attempting to revoke the trust and to remove the bank as trustee, citing Article 6.2 and Article 8 of the trust agreement.

Article 6.2 of the trust provides that after the death of James Franzen, Frances Franzen "may remove any trustee," and that "[a]ny removal under this ... [paragraph] may be made without cause and without notice of any reason and shall become effective immediately upon delivery of ... [written notice] to the trustee" unless Frances Franzen and the trustee agree otherwise.

Article 8 of the trust agreement gives James Franzen "the right to amend or revoke this trust in whole or in part ... by a writing delivered to ... [the] trustee.... After my death, Frances may exercise these powers with respect to the entire trust estate."

The hearing was continued, and the bank filed a Petition for Appointment of a Conservator, asking the probate court to appoint someone to manage and protect Mrs. Franzen's assets. When the hearing on both petitions was held, the probate court ruled that the power of attorney had created a valid agency but that the trust had not been revoked and continued in existence. The probate court found that Mrs. Franzen needed protection, but a conservator was not available, so the Court appointed the bank as "special fiduciary" with responsibility for both trust and non-trust assets pursuant to sections 15–14–408 and 15–14–409, 5 C.R.S. (1997). The probate court ordered the bank to use the assets to make payments for Mrs. Franzen's benefit.

Franzen appealed the probate court rulings. On appeal, the court of appeals reversed, holding that the power of attorney authorized O'Brien to remove the bank as trustee and to revoke the trust. The court of appeals also held, however, that the bank was not liable for expenditures made in good faith after receiving the removal and revocation letter, including the legal fees incurred in the course of opposing O'Brien's efforts.

While the removal and revocation were effective immediately upon receipt of

---

**2.** The record does not reflect and in this opinion we are not concerned with when United Bank of

Denver changed its name. Therefore, we refer to the trustee as "Norwest" or "the bank."

O'Brien's letter, the court of appeals held, the bank was entitled to disburse trust funds in good faith pending judicial resolution of O'Brien's claim that the trust had been dissolved. The court of appeals found that the probate court's award of administration and attorney fees to be paid by the trust estate to the bank were reasonable and appropriate compensation for the bank's duties as a fiduciary under the circumstances, and hence, declined to hold the bank liable.

## II.

### A.

■ A power of attorney is an instrument by which a principal confers express authority on an agent to perform certain acts or kinds of acts on the principal's behalf. *See Willey v. Mayer*, 876 P.2d 1260 (Colo. 1994). In Colorado, the use and interpretation of such instruments is governed by statute. *See* §§ 15–14–601 to –610, 5 C.R.S. (1997). Under the power of attorney statute, the scope of an agent's authority to alter a trust is narrowly construed. "An agent may not revoke or amend a trust that is revocable or amendable by the principal without specific authority and specific reference to the trust in the agency instrument." § 15–14–608(2), 5 C.R.S. (1997).

■ Norwest notes that the power of attorney executed by Mrs. Franzen did not refer specifically to the Franzen trust. Thus, Norwest argues, O'Brien was not authorized to remove the trustee or revoke the trust. The statutory specificity requirement, however, did not take effect until January 1, 1995, almost two years after the power of attorney was executed by Mrs. Franzen.

General principles of statutory construction lead us to conclude that the power of attorney statute is inapplicable to any agency instrument executed prior to its effective date. *See* § 2–4–202, 1 C.R.S. (1997) (statutes are presumed prospective); *see also People v. Munoz*, 857 P.2d 546, 548 (Colo. App.1993) (applying the statute). In addition, the General Assembly expressly stated that the power of attorney statute does not "in any way invalidate any agency or power of attorney executed . . . prior to January 1, 1995," conclusively demonstrating that no retroactive effect was intended. *See* § 15–14–611, 5 C.R.S. (1997).

Norwest responds that the specificity requirement in section 15–14–608(2) merely restated the common law in effect prior to its adoption, so the same result should be reached even though the statute was not intended to be applied retroactively. The bank asserts that the common law would require the power of attorney to refer to the trust by name.

■ Unfortunately for Norwest, the cases it cites state no such common law rule. Instead, these cases stand for the unremarkable proposition that a power of attorney giving an agent broad authority to act on behalf of the principal should be construed in light of the surrounding circumstances. Where a broadly worded power of attorney arguably authorizes acts that may be inconsistent with the principal's interests or intent, the instrument should not be interpreted as allowing the agent to undertake such acts in the absence of specific authority.

For example, in *Estate of Casey v. Commissioner of Internal Revenue*, 948 F.2d 895 (4th Cir.1991), the Fourth Circuit applied Virginia law to hold that an agent acting under a power of attorney that conferred wide-ranging authority to act on the principal's behalf was not authorized to give away the principal's property. The court said, "[T]he failure to enumerate a specific power, particularly one with the dangerous implications of the power to make unrestricted gifts of the principal's assets, reflects deliberate intention." *Id.* at 898.

Similarly, in *Bryant v. Bryant*, 125 Wash.2d 113, 882 P.2d 169 (1994), the Supreme Court of Washington held that an agent acting under a broadly worded power of attorney was not authorized to make gifts of the principal's assets. The court noted the consensus view that "gift transfers or transfers without substantial consideration inuring to the benefit of the principal violate the scope of authority conferred by a general power of attorney to sell, exchange, transfer, or convey property for the benefit of the principal." *Id.* 882 P.2d at 172 (citation omit-

ted). The other cases cited by Norwest are to the same general effect. *See, e.g., De Bueno v. Castro,* 543 So.2d 393, 394–95 (Fla. App.1989); *Realty Growth Investors v. Council of Unit Owners,* 453 A.2d 450, 454–55 (Dela.1982); *Brown v. Laird,* 134 Or. 150, 291 P. 352, 354–55 (1930)

The basic rule recognized in these cases logically might extend by analogy to situations where a power of attorney gives an agent wide authority to make decisions on behalf of the principal but makes no mention of the power to alter the principal's rights under any trust. We are willing to assume, for the sake of argument, that the scope of the agent's authority under the common law in such circumstances would not extend to revocation of a trust established to benefit the principal.

■ Even so, we are not persuaded that under the common law, an agency instrument must expressly refer to a particular trust by name in order to confer authority on the agent to revoke it. Under the reasoning of the cases previously cited, the terms of the power of attorney need only evince an intention to authorize the agent to make decisions concerning the principal's interests in trusts generally, not necessarily a particular trust.

Section 1(c) of the power of attorney executed by Mrs. Franzen expressly authorizes O'Brien to

> manage ... and in any manner deal with any real or personal property, tangible or intangible, or any interest therein ... in my name and for my benefit, upon such terms as ... [O'Brien] shall deem proper, *including the funding, creation, and/or revocation of trusts* or other investments.

(Emphasis added.)

We have little trouble concluding that the quoted language expressly authorizes O'Brien to revoke the Franzen trust, even though it does not mention the trust specifically by name.

### B.

■ Mrs. Franzen contends that Norwest should be strictly liable for trustee and attorney fees spent after the removal and revocation letter was received from O'Brien. In essence, she argues that a trustee should be held liable for all expenses incurred after a trust it oversees is revoked, even if it incurs the expenses in reliance on a court ruling—later vacated on appeal—that the trust remains in effect.

Mrs. Franzen cites a host of authority in support of her contention that a trustee is liable for any act in excess of his or her authority, even if it was undertaken in good faith or in reliance on the advice of counsel. *See, e.g., Morgan v. Indep. Drivers Ass'n Pension Plan,* 975 F.2d 1467, 1470 (10th Cir.1992); *Moore v. Adkins,* 2 Kan.App.2d 139, 576 P.2d 245, 255 (1978).

■ She acknowledges that a trustee is entitled to indemnification for the expenses of prosecuting and defending actions on behalf of the trust, but notes that indemnification is available only if the need for litigation was not caused by the fault of the trustee. *See In re Estate of McCart,* 847 P.2d 184, 187–88 (Colo.App.1992); 3A William F. Fratcher, Scott on Trusts § 244 (4th ed.1988).

■ Nowhere in the authorities cited by Mrs. Franzen can we find support for the view that a trustee is liable for acts in excess of his or her authority when the acts are undertaken in reliance on a court order, even when the ruling underlying the order is overturned on appeal. Both *Morgan* and *Moore* involved actions taken by fiduciaries in reliance on mistaken professional advice, not a court order. In fact, the reason why good faith reliance on the advice of counsel is not a defense to liability for a breach of duty is that a trustee has the option of seeking instruction from a court rather than depending on the potentially erroneous advice of a lawyer. *See Restatement (Second) Trusts* § 226 cmt. b & § 201 cmt. b (1957).

■ As for the propriety of Norwest's commencement of litigation to determine its responsibilities as trustee, we see no legal or equitable basis for imposing liability on the bank. At the time O'Brien sent the removal and revocation letter, the bank's representatives had reason to suspect that Frances Franzen might be incompetent and hence

.lack the capacity to execute a valid power of attorney authorizing O'Brien to act in her behalf. In addition, the remaindermen of the trust and others had expressed concerns about whether O'Brien was acting in Mrs. Franzen's interests.[3]

If the bank had turned over the trust assets as requested and Mrs. Franzen were later demonstrated to have been incompetent to execute the power of attorney, or if O'Brien had absconded with the money, then the bank would have faced liability for breach of its duty of care as a fiduciary. The remaindermen would likely have pointed out that they warned the bank about the possibility of irregularity in O'Brien's request.

■ Of course, to the extent that the bank was entitled to compensation for administering the trust only as long as the trust remained in existence and it remained the trustee, the bank's interests were served by challenging O'Brien's authority under the power of attorney and the terms of the trust agreement. However, the bank's interest in maintaining the trust with itself as trustee does not, ipso facto, demonstrate that the litigation did not benefit the trust estate.

Under the circumstances, then, the bank's decision to obtain a judicial determination of its responsibilities under the trust agreement was not only reasonable, but it appears to have been fully consistent with the bank's duty to protect the interests of the trust and its beneficiaries. Thus, we conclude that the need for litigation did not arise due to any fault on the part of Norwest, and the bank is entitled to indemnification.

### III.

In conclusion, we hold that under the common law, a power of attorney that appears to give the agent sweeping powers to dispose of the principal's property is to be narrowly construed in light of the circumstances surrounding the execution of the agency instru-

ment. However, the principal may confer authority to amend or revoke trusts on an agent without referring to the trusts by name in the power of attorney.

■ Moreover, a trustee is not liable for administration or related attorney fees incurred in reliance on an order of the probate court that is later vacated on appeal. Where the trustee acts in good faith to seek direction from a court concerning its responsibilities in relation to a trust it oversees, the trustee is entitled to indemnification for any associated legal expenses.

Accordingly, we affirm the judgment of the court of appeals in its entirety.

3. We express no opinion concerning the motivations or credibility of Mrs. Franzen's friends and family members, some of whom claimed that O'Brien was attempting to gain control of the trust assets for personal benefit and was acting without Mrs. Franzen's knowledge or assent. The point is not whether O'Brien was in fact

acting in Mrs. Franzen's best interests, but that the bank acted reasonably in light of the available information when it sought instructions from a neutral and detached judicial official rather than immediately complying with O'Brien's instructions.