In the Matter of the Ethel Mae
SCHLAGEL TRUST.

Cassandra Thacker and Kayla Thacker,
Petitioners–Appellants,

v.

Rodney L. Schlagel, Respondent–Appellee.

No. 01CA1176.

Colorado Court of Appeals,
Div. IV.

June 6, 2002.

Law Office of James D. Thorburn, LLC, James D. Thorburn, Richard A. Walker, Elizabeth, Colorado, for Petitioners–Appellants.

Holme, Roberts & Owen LLP, Stephanie M. Tuthill, Richard L. Gabriel, Merry H. Balson, Denver, Colorado, for Respondent–Appellee.

Opinion by Judge VOGT.

Petitioners, Cassandra Thacker and Kayla Thacker (grandchildren), beneficiaries and interested persons under the Ethel Mae Schlagel Trust, appeal the trial court's order denying their petition for appointment of a successor trustee. We affirm.

In 1991, Ethel Mae Schlagel executed a general power of attorney granting her husband, Jake Schlagel, Jr., broad authority to manage her financial affairs. At the same time, the Schlagels created the Trust, which provided for income for Mrs. Schlagel during her lifetime and the disposition of any remaining trust assets to family members on her death. The trust agreement gave the settlor the right to revoke the Trust at any time. It was executed on behalf of Mrs. Schlagel as settlor and trustee "by Jake Schlagel, Jr., Attorney–in–Fact and Agent under Power of Attorney," and by Mr. Schlagel individually as trustee.

In 1997, a document entitled "Revocation of the Ethel Mae Schlagel Trust" was executed on behalf of Mrs. Schlagel, the settlor, by Mr. Schlagel as her attorney-in-fact and agent under power of attorney.

After the deaths of Mr. and Mrs. Schlagel in 1999, a dispute arose among their children and grandchildren, the beneficiaries under the Trust. The grandchildren petitioned for appointment of a successor trustee who would have standing to litigate whether certain assets were the property of the Trust rather than of Mrs. Schlagel's estate. Respondent, Rodney L. Schlagel, Mr. and Mrs. Schlagel's son, objected to the petition. After a hearing, the trial court concluded that there was no trust to which a new trustee could be appointed because the Trust had been validly revoked in 1997. It accordingly denied the grandchildren's petition.

The grandchildren contend on appeal that, because the 1991 power of attorney did not specifically give Mr. Schlagel power to revoke the Trust, the trial court erred in concluding that his purported revocation in 1997 was valid. We disagree.

The relevant instruments in this case were executed prior to the January 1, 1995, effective date of § 15–14–608, C.R.S.2001, the current statute addressing the authority of an agent to revoke a trust. See Colo. Sess. Laws 1994, ch. 188, § 15–14–608 at 1073. Therefore, resolution of the issue presented here is governed by application of the com-

mon law principles set forth in *In re Trust of Franzen,* 955 P.2d 1018 (Colo.1998).

The issue before the supreme court in *Franzen* was whether an agent acting under a durable power of attorney executed before the effective date of § 15–14–608 had the power to revoke a trust even though the trust was not specifically referenced in the instrument granting the power. After reviewing cases from other jurisdictions, including the case on which the grandchildren place primary reliance here, the court stated that it was "willing to assume, for the sake of argument," that an agent under the common law would not have authority to revoke a trust established to benefit the principal if the power of attorney gave the agent broad authority but made "no mention of the power to alter the principal's rights under any trust." The court continued:

> Even so, we are not persuaded that under the common law, an agency instrument must expressly refer to a particular trust by name in order to confer authority on the agent to revoke it. Under the reasoning of the cases previously cited, *the terms of the power of attorney need only evince an intention to authorize the agent to make decisions concerning the principal's interests in trusts generally,* not necessarily a particular trust.

*In re Trust of Franzen, supra,* 955 P.2d at 1022 (emphasis supplied).

The power of attorney at issue here states, in relevant part:

1. *General Grant of Power.* My agent may exercise or perform any act, power, duty, right or obligation whatsoever that I now have or may hereafter acquire, relating to any person, matter, transaction or property, real or personal, tangible or intangible, now owned or hereafter acquired by me, including, without limitation, the specifically enumerated powers contained herein; and I grant to my agent full power and authority to do everything necessary in exercising any of the powers herein granted as fully as I might do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that my agent shall lawfully do or cause to be done by virtue of this power of attorney and the powers herein granted.

. . . .

3. *Power to Acquire and Sell.* My agent may acquire, purchase, exchange, grant options to sell, and sell and convey real or personal property, tangible or intangible, or interest therein, on such terms and conditions as my agent shall deem proper.

4. *Management Powers.* My agent may maintain, repair, improve, invest, manage, insure, rent, lease, encumber, transfer and in any manner deal with any real or personal property, tangible or intangible, or in any interest therein, in my name and for my benefit, upon such terms and conditions as my agent shall deem proper.

. . . .

7. *Business Interests.* My agent may conduct or participate in any lawful business of whatever nature for me and in my name; execute partnership agreements and amendments thereto; incorporate, reorganize, merge, consolidate, recapitalize, sell, liquidate or dissolve any business; elect or employ officers, directors and agents; carry out the provisions of any agreement for the sale of any business interest or the stock therein; and exercise voting rights with respect to stock, either in person or by proxy and exercise stock options.

. . . .

12. *Trust Agreements.* My agent may prepare, sign and execute such trust agreements or other estate planning documents and/or agreements on my behalf as may be necessary or proper in the exercise of the rights and powers herein granted.

13. *Interpretation.* This instrument is to be construed and interpreted as a general power of attorney. The enumeration of specific powers herein is not intended to, nor does it, limit or restrict the general powers herein granted to my agent.

These provisions not only confer on the agent broad powers over Mrs. Schlagel's business interests and financial affairs, including "full power of ... revocation" (¶ 1), but also expressly authorize the agent to "prepare, sign and execute ... trust agree-

ments" (¶ 12). We agree with the trial court that they "evince an intention to authorize the agent to make decisions concerning the principal's interest in trusts generally," which under *Franzen* is sufficient to establish that the agent also has the power to revoke the Trust.

Although, as the grandchildren point out, the power of attorney at issue in *Franzen* specifically referenced revocation of a trust, we conclude that the language in the power of attorney here falls within the holding of *Franzen* even though the phrase "revocation of trust" does not appear. *See also In re Mosteller,* 719 A.2d 1067 (Pa.Super.Ct.1998)(under Pennsylvania statute directing courts to consider language showing principal's intent, power of attorney giving broad general grant of power and including specific language allowing attorney-in-fact to deal with trusts gave attorney-in-fact authority to revoke trust even though power to revoke was not specifically mentioned).

*Franzen* also directed that courts construe powers of attorney in light of the surrounding circumstances. Consistent with that direction, the trial court here properly considered the affidavit of the Schlagels' attorney, who attested that it was Mrs. Schlagel's intent that Mr. Schlagel would have the power to revoke the Trust. The court also noted that Mr. Schlagel had once amended the trust agreement prior to revoking it and that there was no evidence that Mrs. Schlagel ever opposed Mr. Schlagel's authority to revoke the Trust. We note, in addition, that the trust agreement itself was not executed by Mrs. Schlagel but by Mr. Schlagel as her attorney-in-fact and agent. These surrounding circumstances further support the trial court's conclusion that Mr. Schlagel had validly revoked the Trust.

Finally, we reject the grandchildren's suggestion that we reach a different conclusion in the name of "public policy" or in reliance on cases from other jurisdictions. *Franzen* controls our resolution of this issue. The plain language of the power of attorney, especially when considered in connection with the surrounding circumstances, evidences Mrs. Schlagel's intention to authorize Mr. Schlagel to make decisions concerning her interests in trusts generally. This is sufficient under *Franzen* to establish that Mr. Schlagel had authority to revoke the Trust. The trial court did not err in so concluding.

The order is affirmed.

Judge NEY and Justice ERICKSON * concur.