382

2013 COA 149

**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Geoffrey Hunt STELL, Defendant– Appellee.**

**Court of Appeals No. 13CA0492**

Colorado Court of Appeals,
Div. VI.

Announced November 7, 2013

Rehearing Denied January 9, 2014

Mitchell R. Morrissey, District Attorney, Robert J. Whitley, Chief Appellate Deputy District Attorney, Denver, Colorado, for Plaintiff–Appellant

Douglas K. Wilson, Colorado State Public Defender, Holly Lucas, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellee

Opinion by JUDGE GABRIEL

¶1 In this appeal pursuant to C.A.R. 4(b)(3), the People contend that the district court erred in dismissing counts one, two, and four and part of count three of the indictment. We conclude that the district court erred in dismissing these counts (or portions thereof) because we disagree with its determination that the provisions of the Uniform Power of Attorney Act (UPAA) are not pertinent in this case, which involves the scope of the authority granted to defendant, Geoffrey Hunt Stell, under the general power of attorney at issue (the POA). We further conclude, as a separate and independent basis for our holding concerning count four of the indictment, that the court erred in dismissing that count because that count separately charged theft by deception, and such a crime could be committed regardless of any authorization that Stell was given under the POA. Accordingly, we reverse the order of dismissal and remand this case for further proceedings.

## I. Background

¶2 On May 21, 2009, the victim executed the POA in Virginia. The POA named Stell, who is the victim's son and a resident of Colorado, as his agent.

¶3 As pertinent here, the POA gave Stell broad general powers over the victim's property. Moreover, the POA authorized Stell "[to] perform any other acts of any nature, that ought to be done or in the opinion of my [i.e., the victim's] Agents ought to be done, in any circumstances as fully and effectively as I could do if acting personally."

¶4 According to the indictment, between May 29, 2009 and June 5, 2010, Stell "had liquidated all of [the victim's] bank accounts, CDs, 401k, sold the timber on 11 acres of land owned by [the victim], and completed the sale of this same 11 acres." The indictment alleged that Stell received a total of $453,928.81 from the liquidation of these accounts and assets and that he ultimately diverted the proceeds to his personal use.

¶5 The indictment further alleged that in late July or early August 2010, Stell proposed that the victim place his assets in a

trust to protect the assets from creditors. The victim thus signed such a trust, naming Stell as the trustee, and Stell ultimately transferred a piece of the victim's real property to that trust. Unbeknownst to the victim, however, he was not a beneficiary of this trust, and the indictment alleged that by transferring the above-described real property to the trust, Stell permanently deprived the victim of the use and benefit of that property.

¶ 6 On October 2, 2010, the victim terminated the POA, and thereafter, he asked the Denver District Attorney's Office to investigate Stell's actions as agent under the POA. As a result of this investigation, Stell was charged by indictment with eight counts of theft and one count of conspiracy to commit theft. As pertinent here, counts one through three of the indictment alleged that Stell unlawfully obtained the victim's money, without authorization or by threat or deception, in transactions conducted between May 29, 2009 and November 29, 2009 (count one), between November 30, 2009 and May 30, 2010 (count two), and between June 1, 2010 and November 18, 2010 (count three). Count four alleged that on or about August 31, 2010, Stell unlawfully obtained or exercised control over the real property that was transferred to the above-described trust and that he had done so without authorization or by threat or deception.

¶ 7 Stell filed a motion to dismiss counts one through four of the indictment, asserting that because the POA permitted him to do anything that the victim could do with his property, Stell had the legal authority to spend, transfer, and liquidate the assets in question.

¶ 8 The People responded that section 15–14–714, C.R.S.2013, of the UPAA provided that notwithstanding the provisions in a power of attorney, an agent had certain fiduciary duties. The People further argued that this statute defined Stell's duties and that notwithstanding the language of the POA, he breached those duties. Finally, the People argued that such a breach gave rise to a jury question as to whether Stell had committed theft.

¶ 9 The district court disagreed with the People's position, stating that although the facts may well have established a breach of fiduciary duty, that was not the question. Rather, the question was whether Stell had the authority to complete the transactions at issue without having criminal liability. In this regard, the court opined:

I think there's a big difference between having the power to deal with property and exercising that power in a, in a fiduciary way. Largely violating fiduciary duty is a civil matter . . . . I think there, there can be circumstances where a breach of fiduciary duty could be criminal, it could be tied up with fraud, it could be tied up as, as arguably the trust agreement is, with fraud [in] the inducement and all sorts of things. But in this case, the People have conceded that the power of attorney was valid. That means that for all of the periods involved in counts 1, 2 and 4 and for all but the last month in count 3, this Defendant had the authority, he was given the authority by the victim in this case to, to basically do anything with this property that the victim could have done with it. And I think . . . that cannot be theft.

¶ 10 The court thus granted the motion to dismiss as to the entirety of counts one, two, and four and as to the conduct alleged in count three that preceded the termination of the POA.

¶ 11 The People now appeal.

## II. Standard of Review

¶ 12 Because the district court dismissed the theft charges as a matter of law, we review its decision de novo. *See People v. Hall*, 999 P.2d 207, 221 (Colo.2000) (noting that we review conclusions of law de novo).

## III. "Without Authorization" (Counts One Through Four)

¶ 13 The People first contend that the district court erred in concluding, as a matter of law, that the POA authorized Stell to liquidate all of the victim's assets and to use them for his own benefit. We agree.

¶ 14 A person commits theft when he or she "knowingly obtains, retains, or

exercises control over anything of value of another without authorization or by threat or deception ... and ... [i]ntends to deprive the other person permanently of the use or benefit of the thing of value." § 18-4-401(1)(a), C.R.S.2013. A person acts "without authorization" when the owner of the property has not given him or her permission to obtain or exercise control over that property. *See People v. Gracey,* 940 P.2d 1050, 1052 (Colo.App.1996). Moreover, a theft can occur even though initial control of the property was authorized, when, for example, the intent to deprive permanently arises at a time when such control is no longer authorized. *See People v. Treat,* 193 Colo. 570, 577, 568 P.2d 473, 477 (1977).

¶ 15 As noted above, the district court's disagreement with the People's position regarding Stell's motion to dismiss centered on the court's view that section 15-14-714 of the UPAA and any fiduciary duties that it created were inapplicable in this criminal case. In that regard, we think it important to note that the issue in this case is the meaning of "without authorization," as distinguished from whether Stell had knowledge that his conduct was without authorization. Were the latter the issue, which no party has asserted, it would be more difficult to argue that we should look to the UPAA for guidance. In our view, however, on the facts presented here, the question of whether Stell had authority to act under the POA cannot be divorced from statutory and case law providing how a POA is to be construed. This is because the issue of the authority granted under the POA relates to the principal's intent, not an agent-criminal defendant's mens rea. *See In reTrust of Franzen,* 955 P.2d 1018, 1021 (Colo.1998); *see also* § 15-14-702(7), C.R.S.2013 (defining "power of attorney" as "a writing or other record that grants authority to an agent to act in the place of the principal, whether or not the term power of attorney is used"). Moreover, settled statutory and common law rules have been developed to guide courts in determining a principal's intent under a power of attorney. Accordingly, we believe those rules are pertinent, and we turn to them now.

¶ 16 "A power of attorney is an instrument by which a principal confers express authority on an agent to perform certain acts or kinds of acts on the principal's behalf." *Franzen,* 955 P.2d at 1021. The meaning and effect of a power of attorney are determined by the law of the jurisdiction indicated in the power of attorney and in the absence of an indication of jurisdiction, by the law of the jurisdiction in which the power was executed. § 15-14-707, C.R.S.2013; Va. Code Ann. § 64.2-1605 (West 2013). Here, the POA did not indicate what state's law would govern its construction. Accordingly, we would ordinarily apply the law of the state in which the POA was executed, namely, Virginia. *See* § 15-14-707; Va.Code Ann. § 64.2-1605. In this case, however, because both Colorado and Virginia have adopted the UPAA, the applicable law is the same.

¶ 17 Powers of attorney are strictly construed. *Jones v. Brandt,* 274 Va. 131, 645 S.E.2d 312, 315 (Va.2007); *see also Franzen,* 955 P.2d at 1023 (noting that under the common law, a power of attorney that appears to give the agent sweeping powers to dispose of the principal's property is to be narrowly construed in light of the circumstances surrounding the execution of the power of attorney).

¶ 18 Thus, the authority granted by a power of attorney "is never considered to be greater than that warranted by its language, or indispensable to the effective operation of the authority granted." *Jones,* 645 S.E.2d at 315. Moreover, "a power of attorney giving an agent broad authority to act on behalf of the principal should be construed in light of the surrounding circumstances." *Franzen,* 955 P.2d at 1021; *see also Jones,* 645 S.E.2d at 315 (noting that expansive language in a power of attorney "should be interpreted as intending only to confer those incidental powers necessary to accomplish objects as to which express authority has been given to the attorney-in-fact").

¶ 19 And "[w]here a broadly worded power of attorney arguably authorizes acts that may be inconsistent with the principal's interests or intent, the instrument should not be interpreted as allowing the agent to un-

dertake such acts in the absence of specific authority." *Franzen,* 955 P.2d at 1021; *see also Oden v. Salch,* 237 Va. 525, 379 S.E.2d 346, 350–51 (1989) (concluding that the trial court did not err in instructing the jury that under the power of attorney there at issue, the defendant was bound to exercise "the utmost good faith and loyalty to her principal and was duty-bound not to act adversely to the interest of her principal by serving or acquiring any private interest of her own in antagonism or opposition thereto"); *Myers' Ex'r v. Zetelle,* 62 Va. 733, 742 (1872) (noting the "almost irresistible force" of counsel's argument that "however ample the powers conferred by the power of attorney and deed of trust, yet they must be construed with reference to the objects and purposes for which the agency was created," but rejecting counsel's argument as to the principal's alleged purpose in the case before it).

¶ 20 Consistent with these principles, the UPAA as enacted in both Colorado and Virginia provides, in pertinent part:

(1) Notwithstanding provisions in the power of attorney, an agent that has accepted appointment shall:

(a) Act in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest;

(b) Act in good faith; and

(c) Act only within the scope of authority granted in the power of attorney.

(2) Except as otherwise provided in the power of attorney, an agent that has accepted appointment shall:

(a) Act loyally for the principal's benefit;

(b) Act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest;

(c) Act with the care, competence, and diligence ordinarily exercised by agents in similar circumstances.

§ 15–14–714(1)–(2), C.R.S.2013; *accord* Va. Code Ann. § 64.2–1612(A)–(B) (West 2013).

¶ 21 Applying these principles here, *see People v. Madison,* 176 P.3d 793, 802–03 (Colo.App.2007) (concluding, in a criminal case involving charges of causing serious bodily injury to an at-risk adult, that the jury could find that the defendant owed the victim the requisite duty, based on a statutory power of attorney and the related statutory law), we conclude that the district court erred in holding, as a matter of law, that because the POA provided broad general powers, the People could not prove the "without authorization" element of the theft charges at issue. To the contrary, as the People have argued, we conclude that the applicable law, as set forth above, and the evidence developed to date give rise to factual questions for the jury as to whether that element has been satisfied. *See Gracey,* 940 P.2d at 1053 (noting that the question of whether a power of attorney gave the defendant authority to borrow money from the victim's account was a factual question). These questions may include, for example and without limitation, whether, given the language of the POA, Stell acted (1) in accordance with the victim's reasonable expectations and consistently with the victim's interests and intent, (2) in good faith, (3) loyally for the victim's benefit, and (4) with the care, competence, and diligence ordinarily exercised by agents in similar circumstances.

¶ 22 Our conclusion in this regard finds further support in the language of the POA itself. Thus, several provisions of the POA suggest the victim's intent that Stell would act on the victim's behalf, as opposed to in his own interest. For example, the POA authorized Stell:

> *To act for me* [i.e., the victim] in my name, place stead [sic], to ask, demand, sue for, recover, and receive[,] collect, and hold *any and all moneys, securities and other property, of any nature, that now belong to me or may belong to me in the future or in which I may have an interest,* and generally deal with any such property. . . .

(Emphasis added.)

¶ 23 Similarly, the POA authorized Stell to:

> Open accounts of any nature *in my name or in the name of my Agents* and transfer my money or other property to any such account;

Write checks upon or otherwise withdraw all funds or account balances in any saving or checking account now or hereafter outstanding *to my credit or to the credit of my Agents,* whether or not the check or other instrument is drawn to the order of my Agents....

(Emphasis added.)

¶ 24 And the POA authorized Stell to:

Transfer and convey to or withdraw from the trustee of any revocable trust *created by me* any of my real and personal property as my Agents considers [sic] appropriate;

Make any gifts *on my behalf* to any of my children and more remote descendants and the spouse of any child or more remote descendant of mine....

(Emphasis added.)

¶ 25 Accordingly, we reverse the order dismissing counts one, two, four, and portions of count three of the indictment, and we remand this case to the district court for further proceedings on those counts.

### IV. "By Deception" (Count Four)

¶ 26 The People further contend that regardless of whether Stell acted without authorization, the district court erred in dismissing count four of the indictment because that count separately alleged theft by deception and the evidence supports such a charge. As a separate and independent basis for our holding concerning count four, we agree.

¶ 27 As noted above, section 18–4–401(1)(a) makes it a crime to commit theft by, among other elements, taking the property of another either without authorization or by threat or deception. Accordingly, even if Stell was authorized to transfer the victim's assets to a trust, he still could have committed theft by deception, as, for example, if he fraudulently induced the victim to sign the trust agreement that allowed Stell to facilitate a theft. *See People v. Prendergast,* 87 P.3d 175, 186 (Colo.App.2003) ("Even assuming the victims initially authorized defendant to obtain control over their property, the evidence showed

the investors relied upon defendant's misrepresentations when investing with defendant.").

¶ 28 Accordingly, separate from the analysis set forth in part III, above, we conclude that the district court erred as a matter of law in dismissing count four because the evidence could potentially have supported such a charge, regardless of any authorization under the POA.

### V. Conclusion and Remand Order

¶ 29 For these reasons, the order is reversed, and the case is remanded for further proceedings on counts one, two, three, and four of the indictment, applying the legal principles set forth in this opinion.

JUDGE FURMAN and JUDGE PLANK * concur.