James MOFFETT and Rozan O'Brien, Plaintiffs–Appellees,

v.

LIFE CARE CENTERS OF AMERICA, a Tennessee corporation, d/b/a Briarwood Health Care Center, Defendant–Appellant.

No. 07CA0376.

Colorado Court of Appeals, Div. V.

May 15, 2008.

Law Offices of John Robert Holland, P.C., John Robert Holland, Anna E. Cayton–Holland, Erica T. Grossman, Denver, Colorado, for Plaintiffs–Appellees.

Kennedy Childs & Fogg, P.C., Ronald H. Nemirow, Barbara Glogiewicz, Miles Buckingham, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

In this wrongful death case, defendant, Life Care Centers of America, doing business as Briarwood Health Care Center (Briarwood), appeals the trial court's partial summary judgment in favor of plaintiffs, James Moffett and Rozan O'Brien, determining that an arbitration agreement was invalid. It also appeals the order denying its motion to compel arbitration. We reverse and remand for further proceedings.

On February 15, 2004, Dorothy Moffett, who was suffering from Alzheimer's disease, was admitted to Briarwood. As part of the admission process, Dorothy's son, James Moffett, signed various documents provided by Briarwood, including a separate arbitration agreement. The parties agree that Ms. Moffett had executed two powers of attorney appointing her son and daughter (Ms. O'Brien) attorneys-in-fact: a medical durable power of attorney and a general power of attorney. We note that these powers of attorney are not part of the official record before us.

The arbitration agreement provides for the use of arbitration in lieu of a lawsuit to resolve "any dispute that may arise between Dorothy Moffett (the 'Resident') and Briarwood (the 'Facility')." Specifically, the agreement states that the parties agree to arbitrate

any claim, including, but not limited to, any claim that medical services were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered or omitted ... [and] all disputes ... arising out of and in any way connected to the Resident's stay and care provided at the Facility, including but not limited to any disputes concerning alleged personal injury to the Resident caused by improper or inadequate care, including allegations of medical malpractice; any disputes concerning whether any statutory provisions relating to the Resident's rights under Colorado law were violated; and any other dispute under Colorado or federal law based on contact, tort, or statute.

The agreement further states:

It is the intention of the Facility and the Resident that this Arbitration agreement shall inure to the benefit of and bind the Facility, its agents, partners, officers, directors, shareholders, owners, employees, representatives, members, fiduciaries, governing bodies, subsidiaries, parent companies, affiliates, insurers, attorneys, predecessors, successors and assigns, or any of them, and all persons, entities or corporations with whom any of the former have been, are now or may be affiliated; and the Resident, his/her successors, assigns, agents, insurers, heirs, trustees, and representatives, including the personal representative or executor of his or her estate; and his/her successors, assigns, agents, insurers, heirs, trustees, and representatives.

The last section of the agreement, "ACKNOWLEDGMENTS," contains the following bold-faced, capitalized text:

THE UNDERSIGNED ACKNOWLEDGE THAT EACH OF THEM HAS READ THIS ARBITRATION AGREEMENT AND UNDERSTANDS THAT BY SIGNING THIS ARBITRATION AGREEMENT EACH HAS WAIVED HIS/HER RIGHT TO A TRIAL, BEFORE A JUDGE OR JURY, AND THAT EACH OF THEM VOLUNTARILY CONSENTS TO ALL OF THE TERMS OF THE ARBITRATION AGREEMENT.

NOTE: BY SIGNING THIS AGREEMENT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL BINDING ARBITRATION RATHER THAN BY A JURY OR COURT TRIAL.

YOU HAVE THE RIGHT TO SEEK LEGAL COUNSEL AND YOU HAVE THE RIGHT TO RESCIND THIS AGREEMENT WITHIN NINETY DAYS FROM THE DATE OF SIGNATURE BY BOTH PARTIES. ...

NO HEALTH CARE PROVIDER SHALL WITHHOLD THE PROVISION OF EMERGENCY MEDICAL SERVICES TO ANY PERSON BECAUSE OF THAT PERSON'S FAILURE OR REFUSAL TO SIGN AN AGREEMENT CONTAINING A PROVISION FOR BINDING ARBITRATION OF ANY DISPUTE ARISING AS TO PROFESSIONAL NEGLIGENCE OF THE PROVIDER.

NO HEALTH CARE PROVIDER SHALL REFUSE TO PROVIDE MEDICAL SERVICES TO ANY PATIENT SOLELY BECAUSE SUCH PATIENT REFUSED TO SIGN SUCH AGREEMENT OR EXERCISED THE NINETY–DAY RIGHT OF RESCISSION.

Following this text are lines for "Signature of Resident/Date," which was left blank; "Signature of Legal Representative/Date," which was signed by James Moffett, but not dated; and "Signature of Facility Representative/Date," which was signed by a Briarwood employee and dated February 17, 2004.

On October 13, 2004, Ms. Moffett was admitted to St. Luke's Hospital. She died two days later.

Plaintiffs filed a complaint for wrongful death against Briarwood. In response to the complaint, Briarwood filed a motion to stay the trial court proceeding and compel arbitration pursuant to the arbitration agreement.

The trial court concluded that the arbitration agreement was invalid because it did not comply with the standards prescribed by section 13–64–403, C.R.S.2007, of the Colorado

Health Care Availability Act (HCAA). Specifically, the trial court determined that (1) the arbitration agreement was "illegally tendered" because Briarwood knew "Ms. Moffett lacked rational capacity to sign" the agreement, which violated section 13–64–403(11), C.R.S.2007; (2) a copy of the arbitration agreement was not given to Ms. Moffett as required by section 13–64–403(6), C.R.S. 2007; and (3) Mr. Moffett was impermissibly told that, if he did not sign the arbitration agreement, his mother would be refused and denied urgently needed care, in violation of section 13–64–403(7), C.R.S.2007.

The trial court later granted summary judgment for plaintiffs on the basis that the arbitration agreement was invalid. This appeal followed.

## I. Standard of Review

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). We review a grant or denial of summary judgment de novo. *Lutfi v. Brighton Cmty. Hosp. Ass'n*, 40 P.3d 51, 54 (Colo.App.2001).

## II. Validity of the Arbitration Agreement

Briarwood contends that the trial court erred in denying its motion to compel arbitration on the basis that the arbitration agreement violated several provisions of section 13–64–403 of the HCAA. We agree and remand for further proceedings.

■ We review the trial court's decision on a motion to compel arbitration de novo, employing the same legal standards the trial court employed. *See 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1055 (10th Cir.2006).

■ In considering a motion to compel, the trial court must first determine whether a valid agreement to arbitrate exists between the parties to the action. *Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc.*, 98 P.3d 915, 917 (Colo.App.2004).

The court may refuse to compel arbitration "only upon a showing that there is no agreement to arbitrate or if the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision." *Shorey v. Jefferson County Sch. Dist. No. R–1*, 807 P.2d 1181, 1183 (Colo.App.1990), *aff'd*, 826 P.2d 830 (Colo.1992).

■ Whether an agreement to arbitrate exists is a matter of law that we review de novo. *Lane v. Urgitus*, 145 P.3d 672, 677 (Colo.2006); *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo.2003).

### A. Mr. Moffett's Authority to Execute the Arbitration Agreement Under Section 13–64–403(11)

We first address whether section 13–64–403(11) prohibits a person who holds a power of attorney from executing an arbitration agreement, as part of a nursing home admissions contract, on behalf of a patient who is unable to make a rational decision whether to execute such an agreement. We conclude the statute allows an attorney-in-fact with sufficient authority to execute such an agreement. However, on the record before us, we cannot determine whether Mr. Moffett had authority to do so.

Section 13–64–403(11) provides, "No such [arbitration] agreement may be submitted to a patient for approval when the patient's condition prevents the patient from making a rational decision whether or not to execute such an agreement."

We review issues of law involving statutory interpretation de novo. *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006).

Our primary goal in statutory interpretation is to find and give effect to legislative intent. *Colo. Office of Consumer Counsel v. Pub. Utils. Comm'n*, 42 P.3d 23, 27 (Colo. 2002). We first look to the language of the statute, giving words and phrases their plain and ordinary meaning, and we interpret the statute in a way that best effectuates the purpose of the legislative scheme. *Harding v. Heritage Health Prods. Co.*, 98 P.3d 945, 947 (Colo.App.2004). When a court construes a statute, it should read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all its parts. *Colo. Ins.*

*Guar. Ass'n v. Menor,* 166 P.3d 205, 212 (Colo.App.2007). In doing so, a court should not interpret the statute so as to render any part of it either meaningless or absurd. *Id.*

If the statute is unambiguous, we look no further. *Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1193 (Colo.2004). However, if a statute is ambiguous, we may consider prior law, legislative history, the consequences of a given construction, and the underlying purpose or policy of the statute. *Branch v. Colo. Dep't of Corr.,* 89 P.3d 496, 498 (Colo.App.2003).

The plain language of section 13–64–403(11) neither expressly includes nor expressly excludes a person who holds a power of attorney from entering into an arbitration agreement on behalf of a patient who is unable to make a rational decision whether to enter into such an agreement. There is no helpful legislative history on this point. *Cf. Colo. Permanente Med. Group, P.C. v. Evans,* 926 P.2d 1218, 1227 n. 17 (Colo.1996) (*Evans*).

Plaintiffs assert that the HCAA mandates that only a patient—and not a person who holds a power of attorney from the patient—can enter into an arbitration agreement with a health care provider. *See* § 13–64–403(1), C.R.S.2007 ("It is the intent of the general assembly that an arbitration agreement be a voluntary agreement between *a patient* and a health care provider . . . ." (emphasis added) ). They also argue that the absence of any reference to "a person who holds a power of attorney" in section 13–64–403 indicates the General Assembly's intent to prohibit such a person from executing an arbitration agreement on behalf of a patient. In support of this argument, they specifically rely on section 13–64–403(5), C.R.S.2007, which provides that an arbitration agreement may be rescinded "by a *guardian or conservator* of the patient if the patient is incapacitated or a minor." (Emphasis added.) Plaintiffs argue that the General Assembly limited the persons who could rescind an arbitration agreement on behalf of an incapacitated patient to a guardian and conservator and, therefore, in their view, "it would make no sense to allow a patient's power of attorney to enter into an arbitration agreement on behalf of an irra-

tional or incapacitated patient, but then require the court appointment of a guardian or conservator to rescind the agreement."

Plaintiffs' arguments are contradictory. On the one hand, they contend that pursuant to the HCAA, only a patient—and not a person who holds a power of attorney from the patient—can sign an arbitration agreement, while on the other hand, they acknowledge that certain representatives can indeed act for incapacitated persons. Plaintiffs cannot have it both ways.

We reject plaintiffs' suggestion that *Allen* and *Evans* support their proposition that the arbitration agreement here is invalid. In *Allen* and *Evans,* persons holding powers of attorney did not sign the arbitration agreements on behalf of the patients. Rather, the patients signed the agreements. In *Allen,* the supreme court held that the arbitration agreement was unenforceable because it did not comply with section 13–64–403(3) and (4), C.R.S.2007. *Allen,* 71 P.3d at 384. And, in *Evans,* the supreme court simply acknowledged that, "[u]nder the HCAA, an agreement requiring arbitration of claims against health care providers must contain the language required by section 13–64–403(3) and (4) . . . and must comport with the other measures in the section designed to protect patients." *Evans,* 926 P.2d at 1228. Therefore, plaintiffs' reliance on *Allen* and *Evans* is misplaced.

We thus decline to adopt such a narrow construction and conclude that section 13–64–403(11) may not be construed in isolation from statutes governing powers of attorney.

■■■ We begin our analysis by noting that the execution of a power of attorney creates a principal-agent relationship. *See In re Trust of Franzen,* 955 P.2d 1018, 1021 (Colo.1998). "A power of attorney is an instrument by which a principal confers express authority on an agent to perform certain acts or kinds of acts on the principal's behalf." *Id.* Therefore, because an attorney-in-fact stands in the shoes of the principal (this case, the patient), it would be unnecessary and superfluous to have a separate provision in section 13–64–403 explaining that a person who holds a power of attorney has the

authority to sign an arbitration agreement on behalf of the principal-patient if that patient is unable to make a rational decision whether to sign such an agreement. *See id.*

Furthermore, to construe section 13–64–403(11) as prohibiting a person who holds a power of attorney from executing an arbitration agreement on behalf of a patient would frustrate the very purpose of many powers of attorney.

For example, in a statutory power of attorney, an agent may be given the power to "*[s]ubmit to arbitration,* settle, and propose or accept a compromise with respect to a claim or litigation." § 15–1–1313(1)(e), C.R.S. 2007 (emphasis added). However, plaintiffs' interpretation of section 13–64–403(11) would effectively defeat an attorney-in-fact's power to "submit to arbitration."

In addition, the medical durable power of attorney statute, section 15–14–506, C.R.S. 2007, expressly allows a person who holds a power of attorney to exercise all medical treatment decisions on behalf of the patient who lacks decisional capacity:

> An agent appointed in a medical durable power of attorney may provide informed consent to or refusal of medical treatment on behalf of a principal who lacks decisional capacity and *shall have the same power to make medical treatment decisions the principal would have if the principal did not lack such decisional capacity.* An agent appointed in a medical durable power of attorney shall be considered a designated representative of the patient and shall have the same rights of access to the principal's medical records as the principal. In making medical treatment decisions on behalf of the principal, and subject to the terms of the medical durable power of attorney, the agent shall confer with the principal's attending physician concerning the principal's medical condition.

§ 15–14–506(3), C.R.S.2007 (emphasis added).

The provision, "[a] n agent appointed in a medical durable power of attorney ... *shall have the same power to make medical* treatment decisions the principal would have if the principal did not lack such decisional capacity," clearly indicates that, absent a limitation in the medical durable power of attorney, an attorney-in-fact can make exactly the same types of medical treatment decisions that the principal could make if he or she had the mental capacity to do so.

"Medical treatment" is defined as "the provision, withholding, or withdrawal of any health care, medical procedure, including artificially provided nourishment and hydration, surgery, cardiopulmonary resuscitation, or service to maintain, diagnose, treat, or provide for a patient's physical or mental health or personal care. § 15–14–505(7), C.R.S.2007.

Under this statutory definition, the decision to admit the patient to a nursing home clearly constitutes a "medical treatment decision." *See Owens v. Nat'l Health Corp.,* —— S.W.3d ——, ——, 2007 WL 3284669 (Tenn. No. M2005–01272–SC–R11–CV, Nov. 8, 2007) (the decision to admit a patient to a nursing home clearly constitutes a "health care decision"). Thus, our analysis turns on whether an attorney-in-fact's authority to consent to or refuse medical treatment on the principal's behalf, that is, consenting to nursing home care, includes executing an arbitration agreement as part of a nursing home admission contract.

Courts in other jurisdictions have resolved this issue. For example, in *Garrison v. Superior Court,* 132 Cal.App.4th 253, 33 Cal. Rptr.3d 350 (2005), the court concluded that, under California law, an agent may "enter into optional revocable arbitration agreements in connection with placement in a health care facility," finding that it was a "proper and usual" exercise of that agent's powers. *Garrison,* 33 Cal.Rptr.3d at 361. In *Garrison,* a patient's daughter, upon authority as the patient's attorney-in-fact for health care decisions, admitted the patient into a nursing home. *Id.* at 352–54. As part of the admissions process, the attorney-in-fact for health care decisions signed an arbitration agreement on behalf of the patient. *Id.* at 353. The power of attorney for health care decisions signed by the patient allowed the attorney-in-fact to make all health care decisions for the patient if the patient became incapacitated to the same extent as the

patient would if the patient had the capacity to do so. *Id.* at 353–54. The power of attorney also gave the attorney-in-fact the power to execute documents involving the refusal to permit treatment or "to sign '[a]ny necessary waiver or release from liability required by a hospital or physician,' " along with permission for reviewing and disclosing the patient's medical information. *Id.* at 354.

Similarly, in *Hogan v. Country Villa Health Services,* 148 Cal.App.4th 259, 55 Cal. Rptr.3d 450 (2007), the court held that an arbitration agreement was valid. Decedent's daughter, Barbara Hogan, was named as her mother's agent in a health care power of attorney. *Hogan,* 55 Cal.Rptr.3d at 451. When Hogan had decedent admitted to a nursing facility, Hogan signed two arbitration agreements, providing for arbitration of medical malpractice and other claims, including elder abuse claims, against the facility. *Id.* at 451–52. Hogan and her brothers subsequently sued the operators of the nursing facility for elder abuse and wrongful death. *Id.* at 452. Defendants petitioned to compel arbitration of the elder abuse claims. *Id.*

The power of attorney authorized Hogan to make "all health care decisions" for decedent, unless decedent limited that authority. *Id.* Decedent had not imposed any relevant limitations. *Id.* The court concluded that provisions of the California Health Care Decisions Law, together with general agency law, authorized an agent under a health care power of attorney, in selecting a longterm health care facility, to execute admissions forms, including arbitration agreements, unless that power was restricted by the principal. *Id.* at 453. Additionally, the statutes governing long-term health care facilities imposed requirements for arbitration agreements in admission contracts and thereby sanctioned the use, in such contracts, of arbitration clauses meeting those requirements. *Id.* at 455.

> It necessarily follows that when a representative of a prospective long-term health care facility resident reviews and evaluates contracts of admission with an eye towards deciding whether to place the individual at the facility, that decision[ ]making process may include the review and evaluation of

arbitration agreements meeting the requirements of Health and Safety Code section 1599.81, if such agreements are presented by the facility.

*Id.* Thus, executing arbitration agreements was part of the health care decision-making process authorized by the power of attorney. *Id.*

Likewise, in *Owens,* the Tennessee Supreme Court held that a power of attorney authorized the attorney-in-fact to enter into an arbitration agreement. The plaintiff in *Owens* argued on appeal that the power of attorney authorized the attorney-in-fact to make only health care decisions, not legal decisions. The court rejected this argument for several reasons, including the following:

> The plaintiff's argument on this issue is faulty in at least one other respect. Her purported distinction between making a legal decision and a health care decision fails to appreciate that signing a contract for health care services, even one without an arbitration provision, is itself a "legal decision." The implication of the plaintiff's argument is that the attorney-in-fact may make one "legal decision," contracting for health care services for the principal, but not another, agreeing in the contract to binding arbitration. That result would be untenable. Each provision of a contract signed by an attorney-in-fact could be subject to question as to whether the provision constitutes an authorized "health care decision" or an unauthorized "legal decision." Holding that an attorney-in-fact can make some "legal decisions" but not others would introduce an element of uncertainty into health care contracts signed by attorneys-in-fact that likely would have negative effects on their principals. Such a holding could make it more difficult to obtain health care services for the principal. And in some cases, an attorney-in-fact's apparent lack of authority to sign an arbitration agreement on behalf of the principal presumably could result in the principal being unable to obtain needed health care services. For example, a mentally incapacitated principal could be caught in "legal limbo." The principal would not have the capacity to enter into a contract, and the

attorney-in-fact would not be authorized to do so. Such a result would defeat the very purpose of a durable power of attorney for health care.

*Owens,* —— S.W.3d at ——; *see also Briarcliff Nursing Home, Inc. v. Turcotte,* 894 So.2d 661, 665 (Ala.2004) (patient's attorney-in-fact pursuant to a power of attorney validly executed admission contract containing an arbitration provision on behalf of patient so as to bind the patient's estate when bringing a wrongful death claim against the nursing home); *Sanford v. Castleton Health Care Ctr., LLC,* 813 N.E.2d 411, 420 (Ind.Ct.App. 2004) (by signing the nursing home's admission agreement that contained an arbitration clause, patient's attorney-in-fact waived the right to have wrongful death and survival action against nursing home heard by jury). *But see Texas Cityview Care Ctr., L.P. v. Fryer,* 227 S.W.3d 345, 352 (Tex.App.2007) (stating "nothing in the medical power of attorney indicates that it was intended to confer authority on [the attorney-in-fact] to make legal, as opposed to health care, decisions for [the principal], such as whether to waive [the principal's] right to a jury trial by agreeing to arbitration of any disputes").

Although these opinions are not binding on this court, we consider them well reasoned and adopt them here. Thus, we conclude that a person who holds a medical durable power of attorney, in selecting a long-term health care facility, has the power to execute applicable admissions forms, including arbitration agreements, unless that power is restricted by the principal.

■ Here, although the parties do not dispute their existence or authenticity, the powers of attorney are not a part of the official record before us. Instead, there are only references to them in the briefs. Although the existence of the powers of attorney is enough to find error in the trial court's conclusions below, because they are not in the record we are unable to determine whether they contained any restrictions or limitations that would have prevented Mr. Moffett from executing the arbitration agreement. Therefore, on remand, the trial court should determine whether, at the time Mr. Moffett executed the arbitration agreement as part of Briarwood's admission contract, he was validly exercising the authority vested in him by his mother's medical durable power of attorney or general power of attorney.

### B. Section 13–64–403(6)

We next address the trial court's conclusion that a copy of the arbitration agreement was not given to Ms. Moffett as required by section 13–64–403(6).

Section 13–64–403(6) provides that the patient "shall be provided with a written copy of any agreement subject to the provisions of this section at the time that it is signed by the parties."

■ Subsection (6) must be read in conjunction with subsection (11) to avoid an absurd result. *Huddleston v. Bd. of Equalization,* 31 P.3d 155, 159 (Colo.2001) (statutes should be read, not in isolation, but together with all other statutes relating to the same subject or having the same general purpose, to the end that a statute's intent may be ascertained and absurd consequences avoided). It would be absurd to require that a copy of an arbitration agreement be given to a patient who is incapable of making a decision whether to execute such an agreement. Thus, if a person who holds a power of attorney from the patient executes an agreement on the patient's behalf, it logically follows that a copy of the arbitration agreement need not be provided to the patient, but only to the attorney-in-fact. Providing a copy of the agreement to the attorney-in-fact who signed the agreement on behalf of the patient satisfies subsection (6)'s requirement that the patient receive a copy of the agreement. *See Stortroen v. Beneficial Fin. Co.,* 736 P.2d 391, 396 (Colo.1987) (notice to an agent given in the course of a transaction which is within the scope of the agency is notice to the principal).

Here, it is undisputed that Mr. Moffett received a copy of the arbitration agreement. Therefore, if on remand the trial court concludes that Mr. Moffett had the authority to sign the arbitration agreement as his mother's attorney-in-fact, the trial court must find that section 13–64–403(6) was also satisfied.

### C. Section 13–64–403(7)

Last, we conclude that there are disputed issues of material fact regarding whether Mr. Moffett was impermissibly told that if he did not sign the arbitration agreement, his mother would be refused and denied urgently needed care in violation of section 13–64–403(7). Accordingly, the trial court should revisit this issue on remand.

Section 13–64–403(7) states: "No health care provider shall refuse to provide medical care services to any patient solely because such patient refused to sign such an [arbitration] agreement or exercised the ninety-day right of rescission."

Here, appearing in the last section of the arbitration agreement, immediately before Mr. Moffett's signature, is a capitalized, boldface "Acknowledgments" paragraph drawing special attention to the parties' voluntary consent to the arbitration agreement. This paragraph also explicitly states that signing the agreement was not a condition of admission. These facts contradict Mr. Moffett's representation that his consent was not voluntary in that he somehow had no choice but to sign the arbitration agreement so that his mother would receive necessary medical care.

The record demonstrates that Mr. Moffett was a competent individual signing a well-marked, highly visible agreement which indicated very clearly that dispute resolution would be accomplished by way of arbitration. In addition, having the arbitration agreement printed and executed as a separate agreement "cuts strongly against" plaintiffs' position because it suggests that Briarwood made clear that the arbitration agreement was not a condition of admission. *See Miller v. Cotter*, 448 Mass. 671, 863 N.E.2d 537, 547 n. 15 (2007).

In light of the record before us, this factual dispute must be resolved by the trial court.

The judgment and order are reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge ROY and Judge STERNBERG *, concur.